# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5404-16T3

S.B.,[1]

    Plaintiff-Appellant,

v.

K.C.,

    Defendant-Respondent.

_____

Argued September 17, 2018 – Decided October 12, 2018

Before Judges Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-3405-12.

Emily J. Rodriguez argued the cause for appellant (Bressler, Amery & Ross, PC, attorneys; Meghan M. Dougherty, on the brief).

Respondent has not filed a brief.

---

[1] We use initials to protect the identity of domestic violence victims, and to preserve the confidentiality of those proceedings. R. 1:38-3(d)(9) - (10).

PER CURIAM

In this unopposed domestic violence matter, plaintiff S.B. appeals from a June 14, 2017 Family Part order dismissing her amended temporary restraining order (ATRO) and denying her application for a final restraining order (FRO) against defendant K.C., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Because we find the trial court misapplied the second prong of the two-part test enunciated in Silver v. Silver, 387 N.J. Super. 112, 126 (App. Div. 2006), we reverse and remand to the trial court for entry of an FRO.

I.

The following factual and procedural history is relevant to our consideration of the issues presented by plaintiff on appeal. The parties were never married, but have one child together, K.C., Jr., born in August 2007. The parties lived together shortly after their son's birth until defendant was incarcerated a few months later. By all accounts, their relationship was tumultuous. According to plaintiff, defendant committed numerous acts of physical and verbal abuse from 2007 to 2017.

Plaintiff's initial domestic violence complaint, filed on June 18, 2012, listed two separate incidents. In particular, plaintiff claimed that three days

earlier, defendant attended their son's preschool graduation "unannounced." He "became belligerent and hit her in the face." Plaintiff struck defendant in return. During the altercation, defendant threatened to kill plaintiff, claiming "he had 'let her slide too many times.'"

Plaintiff's complaint alleged a criminal mischief incident in May 2012, during which defendant kicked her car, causing dents, while she was sitting inside the vehicle. The complaint also stated there was a past history of physical violence that occurred when the couple's child was three weeks old. In particular, "defendant became upset when [plaintiff] threw his narcotics away[,] . . . physically assault[ing] her and br[eaking] her belongings in her home." A trial judge granted plaintiff's application for a temporary restraining order (TRO).

Apparently, defendant was not served with the TRO until nearly five years later, on February 17, 2017, during a visitation hearing before a second trial judge. At that hearing, the judge continued the initial restraints and scheduled a return date for an FRO hearing.

On March 2, 2017, plaintiff filed an amended domestic violence complaint, incorporating the allegations in her initial compliant and alleging harassment, stalking, and contempt for violating the original TRO as additional

3

A-5404-16T3

predicate acts. The amended complaint also set forth a summary of domestic violence incidents, occurring on various unspecified dates, with the exception of an incident that plaintiff claimed occurred on August 10, 2016, at her mother's house. At that time, defendant threatened plaintiff, through another person, that he would "'F' up that bitch."

Plaintiff's amended complaint otherwise listed numerous incidents with general time frames, i.e., "since 2017," defendant stalked her at her mother's house; "in or around July 2015," defendant punched and stomped plaintiff, causing her injuries, and threatened her family members with a firearm; "in 2015," defendant telephonically threatened that he would "fuck [plaintiff] up" and drove by her house that day; "in or around summer of 2014," defendant struck plaintiff's face and arm and pulled her hair causing injuries; "on multiple occasions" before and after entry of the TRO, defendant assaulted, verbally abused, and threatened to kill plaintiff.

The second trial judge granted plaintiff's ATRO, which was served on defendant the following day, and the matter was scheduled for an FRO hearing on March 16, 2017. Defendant failed to appear at the March 16 hearing before a third trial judge. Plaintiff appeared with counsel. Following her testimony, the judge issued an FRO by default on the grounds of assault and harassment.

A-5404-16T3

The next day, however, defendant appeared in court and filed a motion for reconsideration before the second trial judge, claiming he was mistaken about the hearing date. That judge subsequently granted the motion, and the matter was heard before him on June 9, 2017.

During a one-day hearing, plaintiff was represented by counsel and defendant appeared without counsel. Both parties testified on their own behalf; no witnesses were presented; and no documents were introduced in evidence.

Plaintiff elaborated about each of the allegations raised in her amended complaint. She did not, however, introduce police reports or photographs documenting her injuries or the damages she alleged were caused by defendant. Nor did she offer the testimony of family members or police officers who allegedly witnessed some of the incidents.

Generally, defendant denied all of plaintiff's claims, in part, because he was incarcerated during some of the alleged incidents. However, defendant acknowledged that he engaged in verbal disputes with plaintiff during their son's graduation on June 15, 2012, and during a July 4, 2015 celebration with their son.

Following the conclusion of testimony, the judge reserved decision, which he placed on the record on June 14, 2017, finding plaintiff failed to prove most

5

of the predicate offenses set forth in her amended complaint. For example, the judge cited plaintiff's lack of specificity regarding the dates on which she claimed the 2007 and 2012 acts of criminal mischief occurred, and found she had "no specific time frame" regarding her contention that defendant harassed and threatened her during a telephone call in 2015. Further, the judge found plaintiff failed to corroborate her testimony because she did not call as witnesses individuals who were present when the incidents occurred, and did not introduce into evidence photographs of her injuries or damaged property.

Nonetheless, the judge found plaintiff proved three predicate acts of domestic violence on two separate occasions. Notably, defendant acknowledged a verbal dispute occurred during both of these incidents. In particular, the judge determined that on June 15, 2012, defendant told plaintiff that he "let her slide too many times," based upon the demeanor of the parties as they testified and defendant's admission that there was a verbal altercation at their son's graduation. Secondly, because defendant admitted that an argument occurred on July 4, 2015, it was "more likely true than not true" that defendant called plaintiff "a bitch and cursed at her[.]"

Turning to the second Silver prong, the judge determined plaintiff failed to prove "that there is an immediate danger to her, or that there is a need to prevent further abuse."  In doing so, the judge observed:

> I have two incidents three years apart.  The most recent one being approximately two years ago.  I do [not] see an existence of immediate danger, given . . . the extended period of time the parties were around each other, and there have been no proven incidents of domestic violence between them.

On that basis, the judge denied plaintiff's application for an FRO, and dismissed the ATRO.  This appeal followed.

On appeal, plaintiff contends the trial court committed three errors warranting reversal and entry of an FRO, or in the alternative, a remand for the trial court to consider additional evidence and make additional findings.  In sum, plaintiff contends the trial court:  (1) improperly required corroborative evidence for plaintiff's testimony concerning the dismissed domestic violence acts; (2) failed to make specific credibility findings regarding those acts; and (3) erroneously concluded that an FRO was not necessary to prevent further abuse.

## II.

Ordinarily, "[i]n our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings."  D.N. v.

A-5404-16T3

K.M., 429 N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).  "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence."  Cesare, 154 N.J. at 411-12.  (citing Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

However, reversal is warranted when a trial court's findings are "so wide of the mark that a mistake must have been made."  N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citation omitted).  Consequently, when a reviewing court concludes there is insufficient evidentiary support for the trial court's findings, we reverse.  See Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008) (warranting reversal "if the court ignores applicable standards[.]").  Our review of a trial court's legal conclusions is always de novo.  See Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

When determining whether to grant an FRO pursuant to the PDVA, the trial judge must make two determinations.  Silver, 387 N.J. Super. at 125-28; L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 536 (App. Div. 2011).  Initially, there must be "a finding of domestic violence by the court."  Franklin v. Sloskey, 385 N.J. Super. 534, 541-42 (App. Div. 2006) (citing Chernesky v. Fedorczyk, 346

N.J. Super. 34, 39 (App. Div. 2001)). "[T]he judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Silver, 387 N.J. Super. at 125. However, a single act is sufficient. Cesare, 154 N.J. at 402 ("[O]ne sufficiently egregious action [may] constitute domestic violence under the [PDVA]."); see also McGowan v. O'Rouke, 391 N.J. Super 502, 506 (App. Div. 2007).

Secondly, the trial court must find that "'relief is necessary to prevent further abuse.'" J.D. v. M.D.F., 207 N.J. 458, 476 (2011) (quoting N.J.S.A. 2C:25-29(b)). Thus, after the trial judge determines a predicate act of domestic violence has been committed, the inquiry turns to "whether the court should enter a restraining order that provides protection for the victim." Silver, 387 N.J. Super. at 126.

It is well-settled, however, that the commission of one of the statutory predicate acts of domestic violence does not, on its own, "automatically . . . warrant the issuance of a domestic violence [restraining] order." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995); Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995). Although this determination "is most often perfunctory and self-evident, the guiding standard is whether a restraining order

is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127.

Thus, the second Silver prong requires consideration of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -(6):

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; and
>
> (6) The existence of a verifiable order of protection from another jurisdiction.

Here, plaintiff clearly testified that she feared defendant:

> I feel as though I need a [r]estraining [o]rder because [defendant] feels as though he can do what he want[s], and come around whenever he want[s], and I really don't trust [him]. I believe he will try to do something. . . . I believe he will try to physically harm me, or I believe he will kill me.

Moreover, in response to the court's inquiry regarding plaintiff's reasons for not producing witnesses at the hearing, she stated:

> I didn't want to put any of them in the middle of this. [Bec]ause [defendant] can't get to me, he will attack my witnesses, and try to fight them. And I don't need anyone else['s] life . . . in danger because of an issue with me and him. So I can't . . . put them in the middle of that. I don't want that . . . . [bec]ause he's tried to fight my witnesses, and I don't want them in the middle of it.

As noted, although the trial judge dismissed most of plaintiff's predicate acts, he determined plaintiff proved three acts of domestic violence, i.e., harassment and terroristic threats on June 15, 2012, and harassment on July 4, 2015. Because only one act was necessary to support the FRO, Cesare, 154 N.J. at 402, we need not reach plaintiff's arguments that the trial court erroneously required corroborative evidence and that the court failed to make credibility findings for her other allegations of domestic violence.

We find, however, that the judge failed to give sufficient measured consideration to the ongoing visitation issues concerning K.C., Jr., which will continue to bring the parties into contact and almost inevitably be a source of conflict. See N.J.S.A. 2C:25-29 (a) (4) and (5). In this regard, we note that defendant's misconduct consisted of terroristic threats and two separate acts of harassment, see N.J.S.A. 2C:25-29 (a) (1), that may likely be repeated in the

11

future because of these ongoing issues. Underscoring this future assessment is plaintiff's ongoing fear of defendant, both for herself and others who witnessed his abusive conduct.

Considering the evidence as a whole, we are satisfied that the trial judge was mistaken in determining plaintiff failed to establish the second Silver prong and, therefore, erred in not issuing an FRO to protect plaintiff from future abuse. We therefore reverse and remand the matter to the trial court for entry of an FRO, including such provisions for parenting time with the child as may be appropriate.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION